DECISION AND JUDGMENT ENTRY
This matter is before the court on appeal from a judgment of the Sandusky County Court of Common Pleas, Juvenile Division, which terminated appellant Todd S.'s parental rights and granted permanent custody to the Sandusky County Department of Jobs Family Services ("SCDFS").
The facts of this case are as follows. Todd S. is the biological father of Heidi S., born January 28, 1999, in Mt. Clemens, Michigan. At the time of Heidi's birth and at the permanency hearing, Todd was married to Heidi's natural mother, Tanya S. At the time of the adjudicatory hearing, appellant and Tanya had begun divorce proceedings. Tanya voluntarily surrendered custody of Heidi and is not a party to this appeal.
At birth, Heidi weighed approximately five and one-half pounds, had trouble regulating her body temperature, and developed jaundice. At three-weeks old, Heidi was admitted to the hospital after she began vomiting and her body temperature was low. Heidi was transferred to another hospital where she underwent surgery for gastrointestinal reflux.
While Heidi was hospitalized, the nursing staff suspected that Tanya was purposely harming her. Based on these accusations and the risk of Heidi being placed in foster care, in April 1999, Tanya took Heidi to Fremont, Sandusky County, Ohio, to stay with her parents.
The incident which immediately preceded SCDFS's involvement occurred on May 11, 1999. On that date, at approximately 3:00 p.m., Tanya telephoned her pediatrician in Detroit, Michigan, and reported that Heidi was cold and blue. She was told to contact the local emergency medical service immediately; however, Tanya did not arrive at the Fremont Memorial Hospital emergency room until approximately 7:00 p.m. No explanation was given. Heidi was transferred to Toledo Hospital where the staff expressed concerns that Tanya had caused the infection surrounding Heidi's gastrointestinal tube by pressing on the wound.
On August 17, 1999, SCDFS filed a complaint in the trial court alleging that Heidi was a neglected, abused and dependent child. On the same date, emergency temporary custody was awarded to SCDFS.[1] The adjudicatory hearing was held on October 20, 1999, and the parties agreed that appellant would admit the allegation of dependency.
Prior to the adjudicatory hearing, appellant was informed of his right to counsel. He completed an affidavit of indigency, but the court found that his income exceed the statutory criteria. Thereafter, appellant proceeded pro se.On July 20, 2000, SCDFS filed a motion for permanent custody. In its motion, SCDFS stated that appellant failed to visit Heidi until July 8, 1999, though she was taken into custody on May 18, 1999. SCDFS further stated that appellant did not begin regular visits until January 9, 2000.
On October 3, 2000, David S., appellant's father, filed a motion for joint legal custody of Heidi. The trial court ordered that the hearing on the motion be combined with SCDFS's motion for permanent custody.
On November 28, and November 29, 2000, a dispositional hearing was held on the motion. The court heard the following relevant testimony. Brandi Whittaker, an investigator with SCDFS, testified that Tanya, Heidi's mother, told her that appellant had not wanted her to have Heidi and that he complained about Heidi's medical bills. Tanya indicated to Whittaker that appellant was only concerned with buying a new car. When Whittaker spoke to appellant in May 1999, after Heidi was placed in SCDFS's custody, appellant did not make any inquiries as to her welfare or where she had been placed.
Tanya Bernal was the caseworker from May 1999 until August 2000. Bernal testified that on June 10, 1999, she telephoned appellant to find out what intentions were regarding Heidi. He did not indicate a desire to get custody of Heidi; he did not discuss visitation. Bernal was present on July 8, 1999, when appellant visited Heidi for the first time since May 1999. Bernal testified that appellant did not make a commitment to regularly visit Heidi until March 2000. Bernal testified that Heidi was very attached to her foster parents and that they were willing to adopt her. She felt that permanent custody should be awarded to SCDFS.
Jan Kimberlain, the court appointed special advocate assigned to the case, testified that Heidi had formed a strong emotional bond with her foster parents and that she does not have the same sort of bond with appellant. Kimberlain testified that she believed that it was in Heidi's best interest to stay with her foster parents.
During cross-examination Kimberlain did acknowledge that appellant, at the time of the hearing, had completed the requirements of the case plan; however, she emphasized that had appellant been involved with his daughter from the beginning reunification may have occurred.
Appellant's paternal grandmother, Ruth S., testified that she felt that appellant and Heidi had a bond together. She also stated that she would be willing to babysit and help Heidi get adjusted to living with appellant.
Heidi's foster parent, Lori Rakay, next testified. She stated that following a scheduled visit with appellant, Heidi's hands and face were covered with food and her diaper was not put on properly. She testified that there was also an incident where she had not been wiped properly during a diaper change.
Rakay testified that her family had a very strong bond with Heidi and that she had lived with them for approximately fourteen of her twenty-two months. Rakay stated that she and her husband wish to adopt Heidi.
David S., Heidi's grandfather, testified that he and appellant had bonded well with Heidi. David indicated that at the outset he was not pleased with the infrequency of appellant's visits with Heidi. He stated that appellant took more initiative with Heidi as a result of discussions David had with him and maturation.
Next, appellant testified. Appellant, in narrative form, recounted the events of Heidi's birth, subsequent hospitalizations, and placement with SCDFS. He presented, as evidence, multiple videotapes of their visits to show that he and Heidi had formed a bond.
During cross-examination, appellant testified that he did not get on a regular visitation schedule until January 2000, because he "didn't get anywhere with [the] Agency." He also stated that there was a period of time that he did not have reliable transportation to make the six-hour round trip. However, he did acknowledge that he had the same vehicle in July 1999, as he had at the time of the hearing.
In its judgment entry filed February 27, 2001, the trial court granted permanent custody to SCDFS. As to appellant, the court found that his visits with Heidi were very infrequent and insufficient for Heidi to bond and form an attachment to him. He further found that Heidi had bonded with her foster parents. It is from this judgment that appellant appeals.
Appellant has raised the following four assignments of error:
 "I. THE TRIAL COURT ABUSED ITS DISCRETION BY FAILING TO INFORM APPELLANT OF HIS RIGHT TO COUNSEL AT THE PERMANENCY HEARING/DISPOSITIONAL REVIEW HEARING AND BY FAILING TO DETERMINE IF APPELLANT HAD WAIVED THAT RIGHT PURSUANT TO JUV.R. 29(B).
 "II. THE TRIAL COURT ERRED BY NOT PROPERLY DETERMINING WHETHER APPELLANT WAS ELIGIBLE FOR A COURT APPOINTED ATTORNEY.
 "III. THE TRIAL COURT ABUSED ITS DISCRETION BY PLACING THE BURDEN ON APPELLANT TO PROVE, BY CLEAR AND CONVINCING EVIDENCE, THAT HIS PARENTAL RIGHTS SHOULD NOT BE TERMINATED.
 "IV. SANDUSKY COUNTY DEPARTMENT OF HUMAN SERVICES FAILED TO PROVE BY CLEAR AND CONVINCING EVIDENCE THAT APPELLANT'S CHILD CANNOT BE PLACE [SIC] WITH HIM WITHIN A REASONABLE AMOUNT OF TIME OR SHOULD NOT BE PLACED WITH HIM AND THEREFORE THE TRIAL COURT'S DETERMINATION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
In his first assignment of error, appellant argues that the trial court failed to inform appellant of his right to counsel and failed to determine whether appellant waived his right to counsel. Juv.R. 29(B) provides, in relevant part:
 "At the beginning of the [adjudicatory] hearing, the court shall do all of the following:
 "(1) Ascertain whether notice requirements have been complied with and, if not, whether the affected parties waive compliance;
 "(2) Inform the parties of the substance of the complaint, the purpose of the hearing, and the possible consequences of the hearing, * * *;
 "(3) Inform unrepresented parties of their right to counsel and determine if those parties are waiving their right to counsel;
 "(4) Appoint counsel for any unrepresented party under Juv.R. 4(A) who does not waive the right to counsel;
 "(5) Inform any unrepresented party who waives the right to counsel of the right: to obtain counsel at any stage of the proceedings, to remain silent, to offer evidence, to cross-examine witnesses, and, upon request, to have a record of all proceedings made, at public expense if indigent."
Juv.R. 4(A) provides, in part:
 "Every party shall have the right to be represented by counsel and every child, parent, custodian, or other person in loco parentis the right to appointed counsel if indigent. * * *."
In the present case, at the September 14, 1999 hearing, appellant was informed of his right to counsel and he filled out an affidavit of indigency in order to obtain court-appointed counsel. Appellant was denied appointed counsel because his income was too high. The court informed appellant, in its September 14, 1999 judgment entry, that if he wished to retain counsel he was required to do so within ten days and notify the court.
At the October 20, 1999 adjudicatory hearing, the trial court reiterated appellant's right to be represented by counsel. The court further explained:
 "I mean you have some very good questions, but when we talk about presenting evidence at a future court hearing, especially expert evidence like would be contained in a psychological evaluation, you really need to discuss that with an attorney, because they know how to do that. Lay people generally don't know how to present that kind of expert testimony."
At the November 28, 2000 permanency hearing, appellant was questioned as to why, despite the court's recommendations, he did not retain counsel. Appellant indicated that he was unable to pay the attorney the $5,000 he believed the case would cost. However, appellant further indicated that at the time he decided not to hire an attorney, he had $10,000 in his savings account to purchase an automobile. He further indicated that his salary was $44,500.
Based upon the foregoing and after careful review of the record, we find that the trial court fully and clearly informed appellant of his right to obtain counsel and appellant waived said right. Accordingly, we find that appellant's first assignment of error is not well-taken.
In appellant's second assignment of error, he claims that the trial court failed to properly determine whether appellant was eligible for a court-appointed attorney. Particularly, appellant claims that the court summarily denied his request based solely on his gross income, not upon an examination of his assets and liabilities.
On September 14, 1999, appellant submitted an affidavit of indigency which included disclosure of his monthly income, monthly expenses, and asset information. Appellant has failed to present evidence that the trial court did not fully review all the expenses he listed on the form, as well as his income, in determining that appellant did not meet the necessary criteria. As a reviewing court, we required to presume the regularity of the proceedings below absent evidence to the contrary.Knapp v. Edwards Laboratories (1980), 61 Ohio St.2d 197, 199. Appellant's second assignment of error is not well-taken.
Appellant's third assignment of error claims that the trial court improperly placed the burden of proof on appellant. R.C. 2151.414(B) provides permanent custody may be granted to the agency if the court determines, by clear and convincing evidence, that it is in the best interest of the child. Also, the court must determine, by clear and convincing evidence, that the child "cannot be placed with either of his parents within a reasonable time or should not be placed with his parents * * *" R.C. 2151.414(E).
Appellant contends the trial court shifted the burden of proof on appellant by making the following statement:
 "Mr. S[.], again, I want to go back to the checklist or the outline of factors that I passed out to you earlier. "You can continue to talk about everything that you've done in the case, but I think what's most critical is to convince the Court why it's in the child's best interests to place the child with you. If there was past testimony that you contest then that would be very appropriate to state that now, and you have in some of your testimony."
Upon review of the statement and the context in which it was made, we conclude that the court was simply trying to assist appellant in his presentation of testimony, not shift the burden of proof. At the opening of the permanency hearing, the trial court stated that because the agency had the burden of proof it was to present its case first. Further, the court's February 27, 2001 judgment entry is devoid of any reference to the burden of proof being placed on appellant. Appellant's third assignment of error is not well-taken.
In appellant's fourth and final assignment of error, he claims that the trial court's judgment terminating his parental rights was not supported by clear and convincing evidence. Clear and convincing evidence is that evidence that will create in the mind of the trier of fact a firm conviction as to the allegations sought to be proved. Cross v. Ledford
(1954), 161 Ohio St. 469, 477. As the reviewing court, it is our duty to review the record to determine whether there was sufficient evidence before the trial court to meet the clear and convincing standard. Statev. Schiebel (1990), 55 Ohio St.3d 71, 74.
In its February 27, 2001 judgment entry, the trial court found, as to appellant, the following: from April 1999 until September 1999, when Heidi was first taken to Ohio, appellant did not attempt to visit her; during the eighteen months that Heidi had been in the custody of SCDFS, appellant visited her on less than twenty occasions for a total of less than thirty-six hours of contact. The court further found that appellant was not supportive of Tanya's pregnancy with Heidi and that during Heidi's six-week hospitalization he only visited her on two occasions. Finally, the court noted that Heidi had formed a strong bond with her foster parents who were willing to adopt her, and that she had not bonded with appellant.
Based upon our review of the record and the evidence as summarized above, this court finds that SCDFS presented sufficient evidence to create in the mind of the trial court a firm conviction that Heidi could not be placed with appellant within a reasonable time or should not be placed with him, and that it was in Heidi's best interest to grant permanent custody to SCDFS. Accordingly, we find that appellant's fourth assignment of error is not well-taken.
On consideration whereof, we find that substantial justice was done the party complaining and the judgment of the Sandusky County Court of Common Pleas, Juvenile Division, is affirmed. Costs of this appeal are assessed to appellant.
 JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Melvin L. Resnick, J., and Mark L. Pietrykowski, P.J., CONCUR.
[1] According to the trial court's October 20, 1999 judgment entry, the date of the original temporary placement with SCDFS was May 18, 1999.